IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Brian Sturgeon, #316514, | ) | C/A No. 5:15-04784-HMH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND |
| | ) | RECOMMENDATION |
| Warden, Perry Corr. Inst., | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Brian Sturgeon, ("Petitioner"), a state prisoner, filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("R&R") on Respondent's Return and Motion for Summary Judgment filed March 8, 2016, ECF Nos. 15, 16. Also, on March 8, 2016, pursuant to *Roseboro v. Garrison*,[1] the court advised Petitioner to file a Response to Respondent's Summary Judgment Motion if he wished to pursue his case. ECF No. 17. On April 19, 2016, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 23.[2] Thereafter, on April 29, 2016, Respondent filed a Reply to Petitioner's Response. ECF No. 25. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 16, be granted.

I.    Background

---

[1] 528 F.2d 309 (4th 1975).

[2] Petitioner initially mailed his Response to the Motion for Summary Judgment along with a cover letter explaining why the response was late to Respondent, who forwarded it to the court. ECF No. 20. The court instructed Petitioner to send any communications regarding this case directly to the court. ECF No. 20. Nevertheless, the court accepted the cover letter as a Motion for Extension of Time, which the court granted, and the court further instructed the Clerk of Court to docket Petitioner's Response to the Motion for Summary Judgment. ECF No. 20.

Petitioner is currently incarcerated at Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2008, Petitioner was indicted during the August term of the Greenville County Grand Jury for Assault and Battery with Intent to Kill ("ABWIK") (2008-GS-23-005589) and Murder (2008-GS-23-005590). App. 295–98.[3] Subsequently, in 2009, Petitioner was indicted during the March term of the Greenville County Grand Jury for Kidnapping (2009-GS-23-001673). App. 299–300. Petitioner proceeded to a jury trial on March 8 and 9, 2010, before the Honorable Edward W. Miller, Circuit Court Judge. App. 1. Petitioner was represented by Everett P. Godfrey, Jr., Esquire. *Id.* Assistant Solicitor Sylvia P. Harrison represented the State. *Id.* The jury found Petitioner guilty of ABWIK and kidnapping. App. 213-14. Additionally, the jury found Petitioner guilty of voluntary manslaughter, the lesser-included offense to murder. *Id.* Judge Miller sentenced Petitioner to 30-years' imprisonment for voluntary manslaughter and 30-years' imprisonment for kidnapping, to run concurrently. App. 218-19. Additionally, Judge Miller sentenced Petitioner to 15-years' imprisonment for the ABWIK conviction, to run consecutively. App. 218–19.

Senior Appellate Defender Joseph L. Savitz, III represented Petitioner in the appeal of his conviction and sentence. ECF No. 15-4. In an appellate brief, Petitioner raised the following issue:

> The trial judge committed reversible error by refusing to instruct the jury on involuntary manslaughter, where Appellant testified he was riding with William Hembree and Jandie Finlay when Hembree opened fire on him during an argument, and that Hembree was wounded and Finaly killed when the gun discharged as he fought Hembree for control of the weapon.

ECF No. 15-4 at 4. On December 2, 2011, the South Carolina Court of Appeals dismissed

---

[3] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That Appendix is available at ECF Nos. 15-1 through 15-2 in this habeas matter.

Petitioner's appeal in an unpublished opinion, finding the issue presented was not preserved for appellate review. ECF No. 15-5. On December 20, 2011, the South Carolina Court of Appeals issued a Remittitur. ECF No. 15-6.

II.    Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on May 31, 2012 (2012-CP-23-03618). App. 221–52. Petitioner asserted he was being held in custody unlawfully for "Ineffective Assistant of Counsel" and indicated additional claims were laid out in an attachment to his Application. App. 223. In the attachment, Petitioner alleged the following grounds, repeated verbatim:

1. Ineffective Assistant of Counsel by Mr. Godfrey
2. Failed to investigate Mr. Hembree's GSR SIM kit.
3. Failed to object to substitute medical examiner and did not even question the one they had.
4. Failed to allow me to call my witnesses.  Had 7, 2 of witch were police.
5. Failed to investigate the past shooting Mr. Hembree was in.  In discovery he Mr. Hembree said he was shot like 10 yrs. back.  Plus on 11-1-07 Mr. Hembree used Ricky Motes name to police.  Again Hembree said he had been shot in past.
6. Failed at being my lawyer, when he gave false testimony on me during his opening statement.
7. Failed to represent me at trial by not trying to get me Involuntary, Self-Defense or Accidental Death.
8. Failed to object to solicitor testifying.
9. At trial the jury was called back to the court room.  I was not.
10. Ms. Finley also had gun shot wound to Rt. index finger.  Godfrey failed to investigate this also.
11. Failed to investigate Mr. Seaborn on making deals with police for drug charges to testify.
12. The State and Mr. Godfrey failed to call the states only witness to crime.  Andy Hagin who made 911 call and who's apartment it took place at.
13. Mr. Godfrey failed to really use Citgo video
14. Mr. Godfrey failed to use a letter I wanted the jury to read, that one of my witnesses I wanted Jimmie Jo Bowman wrote about me and Mr. Hembree.
15. Failed to object to character evidence from McKittrick and failed to show all his story changes.  McKittrick lied all through his testimony.  Plus you could see he was very high at trial.  I asked Godfrey to request drug test.
16. Failed to object to Fullers bad acts and deals she made to testify.
17. Before trial judge failed to acknowledge any of the pre-trial motions, filed before

trial.

18. Godfrey failed to object to prejudicial comment (prior bad acts).
19. Failed to object to solicitor testifying in opening statement and catching lie or prior inconsistent statements.
20. Failed to object to solicitor playing on the "Passion of the jury".
21. Failed to put states case through adversarial testing.
22. Failed to object to Mr. Hembree in court room during trial.
23. Failed to put up a defense or to look out for my best intrest.
24. Failed to object to my sentence being ran consecutive.
25. If the state really felt I did this crime. Why did I not have a weapon charge? They had carjacking and never used it.
26. Before trial at preliminary hearing Godfrey waived my presence.
27. Failed to produce expert witness, in support of my defense we spoke of
28. State or Mr. Godfrey failed to get mental evaluation on me before trial.
29. Failed to represent me by never getting me a plea bargain.
30. Failed to investigate Dana Gilstrap, about Hembree wanting a gun night before crime.
31. Failed to investigate or try and impeach Hembree about his lying to police about his name.
32. Failed to consult me fully on chain of custody on DVD and pink bucket.
33. Failed to put out at trial Seaborn said, I was driving when Hembree said he was.
34. Failed to object to hearsay testimony from Hembree.
35. Failed to object to solicitors prejudicial comment.
36. Failed to object to solicitors bad comment.
37. I feel judge denied me fairness in not letting me claim self-defense.
38. I feel I was tried and convicted without being truely indicted by a grand jury.

App. 228–31. Assistant Deputy Attorney General Karen C. Ratigan filed a Return on behalf of

the State. App. 253–58. A PCR hearing was held on June 18, 2014, before the Honorable Robin

B. Stillwell. App. 259-83. Petitioner was present and represented by Rodney Richey, Esquire;

Assistant Deputy Attorney General Ratigan appeared for the State. *Id.* Petitioner and his trial

attorney, Bill Godfrey, testified as witnesses during the PCR hearing. *Id.* In an Order filed March

8, 2013, the PCR court denied Petitioner's PCR Application in full, finding Petitioner raised the

following allegations and making the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has
> heard the testimony and arguments presented at the PCR hearing. This Court has
> further had the opportunity to observe each witness who testified at the hearing,
> and to closely pass upon their credibility. This Court has weighed the testimony
> accordingly. Set forth below are the relevant findings of fact and conclusions of

law as required by S.C. Code Ann. § 17-27-80 (2003).

## Ineffective Assistance of Counsel

The Applicant alleges he received ineffective assistance of counsel.  In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence."  Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance.  See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Porter v. State, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006).  In order to prove prejudice, an applicant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry v. State, 300 S.C. 115, 117-18, 386 S.E.2d 624, 625 (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome at trial."  Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052).

The Applicant stated he discussed the case with trial counsel and reviewed the discovery materials.  The Applicant did not deny he was at the scene, but stated the murder victim died while he was fighting with William Hembree (the ABWIK victim).  The Applicant stated trial counsel failed to investigate the issue of why Hembree's gunshot residue test was not sent to SLED.  The Applicant stated trial counsel put his character in issue in his opening statement.  The Applicant stated trial counsel should have acted in his best interest and requested a voluntary manslaughter charge.  The Applicant stated trial counsel did not attempt to secure a plea offer.  The Applicant stated trial counsel should have objected to the consecutive sentence as improper.  The Applicant stated trial counsel should have cross-examined witnesses about the "lack of a gun" because the State had no evidence of a weapon.  The Applicant stated trial counsel should have objected to Hembree's hearsay testimony.  The Applicant stated trial counsel should have impeached Hembree because he initially did not give his correct name to the police.  The Applicant stated the confrontation clause was violated because trial counsel did not cross-examine the medical examiner.

Trial counsel testified he filed discovery motions, reviewed those materials with the Applicant, and discussed his version of events.  Trial counsel testified the defense strategy was always to argue self-defense and have the Applicant testify. Trial counsel testified he was sure they discussed Hembree's gunshot residue kit but noted there would realistically be residue on Hembree because he fought with the Applicant over the gun.  Trial counsel testified the Applicant's D.N.A. was matched in a Kentucky murder case and the District Attorney in Kentucky and the Assistant Solicitor in this case agreed to a twenty-five year offer.  Trial counsel

testified the Applicant did not want to accept this offer because he said this was not a murder. Trial counsel testified he pointed out at trial the inconsistencies with Hembree's statement and testimony. Trial counsel testified there was no basis to object to the consecutive sentence.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have investigated Hembree's gunshot residue kit. The Applicant stated Hembree's gunshot residue kit was never sent to SLED for testing. The Applicant stated he wanted this test to be completed because it would have tested positive. The Applicant admitted, however, that he and Hembree were struggling over the gun when it fired. Trial counsel testified, therefore, that Hembree's gunshot residue test would realistically have been positive. This Court finds the Applicant failed to demonstrate how the results of Hembree's gunshot residue test would have had any impact upon his case. See Skeen v. State, 325 S.C. 210, 481 S.E.2d 129 (1997) (holding applicant not entitled to relief where no evidence presented at PCR hearing to show how additional preparation would have had any possible effect on the result at trial).

This Court finds the Applicant failed to meet his burden of proving plea counsel did not obtain a plea offer in this case. Trial counsel testified that the Assistant Solicitor and the District Attorney from Kentucky agreed to make twenty-five year recommendations, but that the Applicant refused. This Court finds trial counsel's testimony is credible. This Court finds trial counsel negotiated an advantageous plea agreement and relayed it to the Applicant, who chose to reject it. This Court finds trial counsel fulfilled his responsibilities in this regard. See Davie v. State, 381 S.C. 601, 675 S.E.2d 416 (2009) (holding counsel's failure to convey the State's plea offer to defendant constituted deficient performance); see also Rule 1.2(a), RPC, Rule 407, SCACR (noting it is axiomatic that an attorney cannot force his client to accept a plea offer and that the decision whether to accept or reject such an offer rests solely with the client).

This Court finds the Applicant failed to meet his burden of proving trial counsel put his character into issue during his opening statement. During his opening, trial counsel said "both [the Applicant] and Skip Hembree were running from the law at the time. They had outstanding warrants on them." (Trial transcript, p. 31). This Court finds that, given the defense strategy, this statement was not improper. Regardless, even assuming arguendo this statement was inadvisable, the Applicant cannot prove any resulting prejudice because of the overwhelming evidence of guilt. See Franklin v. Catoe, 346 S.C. 563 n. 3, 552 S.E.2d 718, 722 n. 3 (2001) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonable affected the result of defendant's trial); Geter v. State, 305 S.C. 365, 367, 409 S.E.3d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

This Court finds the Applicant failed to meet his burden of proving trial counsel did not properly handle Hembree's testimony. The Applicant argues trial counsel should have objected to Hembree's testimony that a doctor told him about his injuries. (Trial transcript p. 48, lines 9-11; p. 49, lines 14-17). This Court finds there was no need to object, as these statements were not made for the truth of the matter asserted. See Rule 801(c), SCRE. The Applicant argues trial counsel should have impeached Hembree about having given a false name to the officers and having been involved in a prior shooting. This Court finds, however, that trial counsel impeached Hembree with inconsistencies between his statement and testimony and also questioned him about why he told police the Applicant's name was Brian Sorgee (when he had known the Applicant's true name). (Trial transcript, pp. 53-64). This Court notes trial counsel is a very experienced criminal defense attorney and did a fine job of cross-examining the State's key witness.

This Court finds the Applicant failed to meet his burden of proving trial counsel did not properly cross-examine witnesses. The Applicant argued trial counsel should have questioned witnesses about "the lack of a gun" because the State did not produce evidence of a weapon. This Court finds this allegation is entirely without merit, as the Applicant told the jury that both the ABWIK and Murder victims had been shot during a struggle. (Trial transcript, pp. 147-48; pp. 154-55). The Applicant argues trial counsel should have cross-examined the medical examiner about the trajectory of the murder victim's wounds. This Court finds the Applicant has failed to produce any reports or expert testimony as to what the medical examiner could have testified to about the murder victim's wounds. See Dempsey v. State, 363 S.C. 365, 370, 610 S.E.2d 812, 815 (2005) (finding that, as the applicant failed to have an expert testify at the evidentiary hearing, "any finding of prejudice is merely speculative"). This Court further finds the lack of cross-examination of the medical examiner did not amount to a violation of the confrontation clause.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have requested a voluntary manslaughter charge. During the charge conference, trial counsel stated "my client does not want me to request a potential lesser included manslaughter charge. He has told me that he prefers to go up or down on murder." (Trial transcript, p. 176). The Applicant did not dispute this assertion. Based upon the clear record, this Court finds trial counsel spoke to the Applicant about potential jury charges and the Applicant indicated he did not want charges on lesser-included offenses. See Strickland, 466 U.S.[] at 688, 104 S. Ct. at 2065 (noting a defense attorney has a duty to consult with the defendant regarding "important decisions" in the overall defense strategy). This Court notes this is in keeping with the Applicant's contention that this was not a murder. This Court further notes trial counsel requested – and received – a self-defense charge. This Court finds trial counsel implemented the defense strategy he had discussed with the Applicant and the Applicant failed to prove any deficiency.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the consecutive sentence in this case. This Court finds the Applicant has failed to present any cognizable basis upon which trial counsel could have made such an objection to a lawful sentence.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test – that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland – that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

### All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant finds the Applicant failed to present any testimony, argument, or evidence at the hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

### CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial and sentencing proceedings. Counsel was not deficient and the Applicant was not prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of this Order if he wants to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

**IT IS THEREFORE ORDERED**:

1. That the application for post-conviction relief be denied and dismissed with prejudice; and

2. That the Applicant be remanded to the custody of the Respondent.

App. 288–94.

PCR Counsel filed a Notice of Appeal on Petitioner's behalf on August 20, 2014. ECF No. 15-7. On appeal, Deputy Chief Appellate Defender Wanda H. Carter filed a *Johnson*[4] petition for a writ of certiorari to the South Carolina Supreme Court on Petitioner's behalf. ECF No. 15-8. In the *Johnson* petition, Petitioner presented the following issue for review:

> Trial counsel erred in negatively attacking petitioner's character during opening arguments by revealing prior bad act information via comments such as "[petitioner] and state's witness William Hembree were running from the law" and that they "had outstanding warrants on them" at the time the crimes occurred because these remarks were improper and prejudicial, and even described by the PCR judge as arguably "inadvisable," particularly since there was no overwhelming evidence presented against petitioner at trial.

ECF No. 15-8 at 3. Petitioner subsequently filed a pro se *Johnson* petition for writ of certiorari, raising the following issues:

> (A)
>
> The PCR Court erred in failing to find that trial counsel rendered ineffective assistance when counsel failed to object to the "consecutive" sentences handed down by the trial court.
>
> (B)
>
> The PCR Court erred in failing to find that trial counsel rendered ineffective assistance of counsel when counsel failed to properly impeach the State's key witness, William Hembree with, prior instances in which he lied to the police.

ECF No. 15-9. The South Carolina Supreme Court denied the petition on August 20, 2015, ECF No. 15-10, and a Remittitur was sent on September 9, 2015, ECF No. 15-11.

III.    Discussion

A.  Federal Habeas Issues

Petitioner raises the following issue in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

---

[4] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

GROUND ONE: Trial court erred in failing to instruct the jury on involuntary manslaughter.

Supporting Facts: during trial Petitioner testified he was riding with William Hembree and Jandie Finlay when Hembree opened fire on him during an argument, and Hembree was wounded and Finaly died when the gun discharged as Petitioner fought Hembree for control of the weapon. ECF No. 1 at 5.

GROUND TWO: Ineffective assistance of counsel.

Supporting Facts: Trial counsel rendered deficient performance in negatively attacking Petitioner's character by revealing prior bad acts during opening summation by telling the jury Petitioner was running from the law and had outstanding warrants at the time of the incident.  The PCR Court even found this to be arguably inadvisable.  Trial Counsel's comments denied Petitioner the effective assistance of counsel and his right to a fair trial. *Id.* at 7.

GROUND THREE: Ineffective assistance of counsel.

Supporting Facts: Petitioner was found guilty of 3 offense and the trial court sentenced Petitioner two (2) thirty (30) year consecutive sentences and an additional fifteen (15) year consecutive sentence thus totaling 45-years.  Counsel should have asked for concurrent sentences pursuant to S.C. Code Ann. § 17-25-50.  The prejudice incurred is easily seen as Petitioner will lose his liberty for 45-years rather than 30-years therefore an additional 15-years confinement. *Id.* at 8.

GROUND FOUR: Ineffective assistance of counsel

Supporting Facts: Trial Counsel failed to impeach State's witness Hembree during trial in that Hembree lied numerous times as the jury should have been privy to Hembree's propensity to lie as Petitioner's credibility and Hembree's credibility was a critical issue before the jury.  Counsel had this readily available information and utterly failed to impeach the State's star witness. *Id.* at 10.

GROUND FIVE: Trial Counsel was ineffective for failing to obtain an expert witness to challenge the gun shot residue on State's witness Hembree.

Supporting Facts: Had trial counsel of obtained an expert and had the gun shot residue test conducted on Hembree, this test would have revealed THAT Hembree had gun shot residue on his hands that would have corroborated Petitioner's version of events during trial and established his actual innocence that Hembree was the actual shooter, not Petitioner.  Petitioner testified in detail to this during PCR, See App. 244.  As is seen on page 244 SLED was never asked to perform a gunshot residue test.  Counsel's failure in this regard denied Petitioner his right to present a complete defense in support of his actual innocence. *Id.* at 14.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the Court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C. Habeas Corpus Standard of Review

1. Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

### a.   Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137–44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective

assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404–05 (2000) (quoting from § 2254(d)(1) (emphasis added in original)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405–13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that

the state court unreasonably determined the facts in light of the evidence presented in state court.

b.   Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims.  First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  *Id.* at 687.  Second, the petitioner must show that this deficiency prejudiced the defense.  *Id.* at 694.  The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 563 U.S. at 190.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 563 U.S. at 180–81.  The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did."  *Id.* at 182.  In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel.  *Id.* at 179.  In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ.  *Id.* at 180.  The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts.  *Id.* at 180–81.  Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must

exhaust state remedies," the Court held that to permit new evidence to be presented in a federal

habeas court "would be contrary to that purpose." *Id.* at 182 (internal citation and quotation

marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel

claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state

court's application of the *Strickland* standard was unreasonable[,]" not "whether defense

counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For

purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an

*incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in

original). "A state court must be granted a deference and latitude that are not in operation when

the case involves review under the *Strickland* standard itself." *Id.*

### 2.    Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C.

§ 2254. This statute permits relief when a person "is in custody in violation of the Constitution

or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the

state's highest court with authority to decide the issue before the federal court will consider the

claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural

bypass operate in a similar manner to require that a habeas petitioner first submit his claims for

relief to the state courts. A habeas corpus petition filed in this court before the petitioner has

appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief

in the state courts will be dismissed absent unusual circumstances detailed below.

### a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as

follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d

767, 770 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).  Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts.  A PCR must be filed within one year of the judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals.  *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts.  In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of

the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague*

18

*v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### IV.    Analysis

#### A.  Procedurally Barred Grounds

Respondent maintains Grounds One and Three and Five are procedurally barred from habeas review. ECF No. 15 at 11–12. In his Response to Summary Judgment, Petitioner addresses the procedural bar arguments concerning these claims. ECF No. 23. The undersigned will address the procedural bar arguments below.

##### 1. Ground One:  Trial Court Error-Jury Instruction

Respondent acknowledges that Ground One was the basis for Petitioner's direct appeal but points out that the state court of appeals found the issue was not preserved for appellate review. ECF No. 15 at 11. Respondent additionally argues that the claim is not cognizable in this action because it does not concern a violation of federal law. *Id.* Therefore, Respondent maintains Ground One is not available for review as it is either not cognizable or procedurally barred. *Id.* In response, Petitioner admits that his Ground One concerns a trial court error but argues the claim "should be viewed through the lens of ineffective assistance of counsel and any default should be imputed to the State." ECF No. 23 at 4. Respondent disagrees, noting that Petitioner raised this issue specifically as one of trial court error rather than ineffective assistance of counsel. ECF No. 25 at 2. Respondent additionally argues that merely alleging ineffective assistance of counsel is insufficient to show cause, particularly where Petitioner has failed to include any law or facts in support of that claim. *Id.* The undersigned agrees.

As an initial matter, the undersigned agrees with Respondent that Petitioner's claim that the trial court erred in omitting a charge on involuntary manslaughter is one of purely state law and is, therefore, not cognizable in this habeas action. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (emphasis added)). South Carolina law defines involuntary manslaughter as follows:

> (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others. To constitute involuntary manslaughter, there must be a finding of criminal negligence, statutorily defined as a reckless disregard for the safety of others. Recklessness is a state of mind in which the actor is aware of his or her conduct, yet consciously disregards a risk which his or her conduct is creating. A person can be acting lawfully, even if he

is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting.  The negligent handling of a loaded gun will support a charge of involuntary manslaughter.

*State v. Gibson*, 701 S.E.2d 766, 771 (S.C. Ct. App. 2010) (quoting *State v. Brayboy*, 691 S.E.2d 482, 485 (S.C. Ct. App. 2010)).  South Carolina law also dictates when a charge of involuntary manslaughter should be given in a trial.  *Id.* at 770 ("Declining to charge the lesser included offense is warranted when it 'very clearly appear[s] that . . . *no evidence whatsoever* [exists] tending to reduce the crime from murder to manslaughter.'" (quoting *Brayboy*, 691 S.E.2d at 485)).  Though the record reflects that the trial judge considered whether to charge involuntary manslaughter, he declined to do so, and this Court cannot review the state courts' decisions regarding state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions.").

Even to the extent Petitioner's Ground One could be broadly construed as a violation of due process for failure to charge, the basis for Petitioner's allegation is trial court error.  *See* ECF No. 1 at 5. And though the issue of whether Petitioner should have received an involuntary manslaughter charge was raised on direct appeal, the South Carolina Court of Appeals found this issue was not preserved for appellate review because no contemporaneous objection was made to the jury charge during Petitioner's criminal trial.  ECF No. 15-5.  In South Carolina, for an issue to be preserved for appellate review, there must be a contemporaneous objection made when the evidence, such as testimony, is sought to be introduced. *State v. Glenn*, 330 S.E.2d 285 (S.C. 1985) (holding defendant failed to preserve for review the question of improper impeachment where trial judge ruled that defendant's prior prostitution convictions could be used for impeachment purposes and defendant elected not to testify); *State v. Hoffman*, 440 S.E.2d 869,

873 (S.C. 1994) ("A contemporaneous objection is required to properly preserve an error for appellate review.").

According to the trial transcript, trial counsel did not request that the trial court charge involuntary manslaughter,[5] nor did he object to the trial court's omission of that charge.[6] Therefore, this issue was not preserved for appellate review, and is procedurally barred from habeas review. *See e.g.*, *Satterfield v. Zahradnick*, 572 F.2d 443, 446 (4th Cir. 1978) ("Errors at trial not objected to, in contravention of State contemporaneous objection rules, are not cognizable in federal habeas corpus proceedings, absent a showing of cause for non-compliance and prejudice."); *McKenzie v. Cartledge*, No. 8:13-CV-02488-RBH, 2014 WL 3919711, at *2 (D.S.C. Aug. 11, 2014) *appeal dismissed*, 595 F. App'x 240 (4th Cir. 2015) (finding a procedural bar where "Petitioner raised the issue on direct appeal to the South Carolina Court of Appeals, [and] the appellate court found that the issue was unpreserved for direct review. Indeed, South Carolina appellate courts require that issues be adequately raised to and ruled upon by a trial court for appellate review for error.").

Petitioner seeks to overcome the procedural default by insisting that his Ground One "must be viewed through the lens of ineffective assistance of counsel." ECF No. 23 at 4. However, as Respondent points out, Petitioner has raised this claim as trial-court error, not ineffective assistance of counsel. He has also failed to provide any legal authority to support his argument that his Ground One should be "viewed through the lens of ineffective assistance of

---

[5] Trial counsel told the court: "[M]y client does not want me to request a potential lesser included manslaughter charge. He has told me that he prefers to go up or down on murder." App. 176.

[6] When the trial judge indicated he was inclined to charge voluntary manslaughter but not involuntary manslaughter based on the evidence that had been presented, trial counsel did not object. App. 178.

counsel." As Petitioner has failed to show either cause or prejudice, any procedural default of his Ground One should not be excused.

For all of the above reasons, the undersigned recommends granting Respondent's Motion for Summary Judgment on Ground One.

2. Ground Three: Ineffective Assistance of Counsel-Sentencing

Respondent maintains that Ground Three "was not specifically ruled on by the PCR judge as a violation of statute and Petitioner failed to seek a Rule 59(e), SCRCP, to seek a specific finding. Therefore, the claim was not available for review in the PCR appeal." ECF No. 15 at 11–12. Petitioner, on the other hand, asserts that any procedural default of his Ground Three should be excused, claiming that he meets the requirements of *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012). ECF No. 23 at 5–6. Petitioner goes on to argue that he "articulated his arguments in state court in precisely the same fashion as presented in the instant federal petition and brief." ECF No. 23 at 6. Respondent argues that because the claim raised in Petitioner's Ground Three is without merit, *Martinez* does not excuse the procedural default of the same. ECF No. 25 at 3.

As previously noted, "a federal habeas court may consider only those issues which have been 'fairly presented' to the state courts." *Matthews v. Evatt*, 105 F.3d at 911. Although the claims presented in federal court and state court need not be "identical," *see Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999), the petitioner must present the "'substance' of his federal habeas corpus claim" to the highest state court with authority to consider it, *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). Presenting the "substance" of the claim requires that the claim "'be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be

lurking in the woodwork will not turn the trick.'"  *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).  "In other words, fair presentation contemplates that 'both the operative facts' and the 'controlling legal principles' must be presented to the state court."  *Matthews*, 105 F.3d at 911 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)).

Petitioner raised a similar claim to Ground Three in his PCR application, asserting that trial counsel was ineffective because he "[f]ailed to object to my sentence being ran consecutive[,]" App. 230, and supporting that argument by stating, "I feel he should of objected here.  It was all in one crime and should of ran concurrent.  Failed to represent[,]" App. 241. During the PCR hearing, Petitioner testified that he believed trial counsel should have objected to the consecutive sentence.  App. 267.  He further testified that his understanding was that the sentence could not be consecutive, but he also seemed to indicate that his understanding was partially based on the fact that he was from Kentucky, admitting "they do kind of stuff different than here . . . ."  *Id.*  The PCR court ultimately found Petitioner had failed to meet his burden that trial counsel should have objected to the consecutive sentence because Petitioner failed to present any cognizable basis on which trial counsel could have made such an objection.  App. 293.  Petitioner now argues that trial counsel was ineffective for failing to challenge the consecutive sentence based on section 17-25-50 of the South Carolina Code which provides:

> In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense, notwithstanding under the law they constitute separate and distinct offenses.

In his pro se *Johnson* petition, Petitioner identified the above statute as one that trial counsel could have raised to support the argument that Petitioner's sentences should have been concurrent since they were part of one crime.  ECF No. 15-9 at 5–8.

Based on a review of the PCR court proceedings and the PCR court's order of dismissal, the undersigned finds that Petitioner presented the same basic argument that he now raises—that his sentences should have been run concurrently because they were all part of the same crime— to the PCR court.  The only real difference is the inclusion of the statute that codifies the same legal principles Petitioner raised in his PCR application.  While not identical, the substance of Petitioner's Ground Three was squarely presented to the PCR court.  Accordingly, the undersigned agrees with Petitioner that this issue was fairly presented for review in the state PCR appeal.  The undersigned will address the merits of Petitioner's Ground Three below.

3.  Ground Five:  Ineffective Assistance of Counsel-Expert Witness

Respondent asserts that Petitioner's Ground Five "was not raised to or ruled on by the PCR judge and, consequently, was not available for review in the *Johnson* appeal."  ECF No. 15 at 12.  As with Ground Three, Petitioner argues that the procedural default should be excused, that he meets the requirements of *Martinez*, and that he presented this claim squarely in state court.  ECF No. 23 at 5–9.  In reply, Respondent argues that *Martinez* provides no excuse for the default because the underlying claim is without merit.  ECF No. 25 at 2–3.

In his PCR application, Petitioner asserted that trial counsel was ineffective for failing to investigate Hembree's gunshot residue ("GSR") kit.  App. 228.  Petitioner explained further:

> I had asked Mr. Godfrey for many, many months to get this result of the test.  The state failed to send test to SLED to be analyzed.  I feel and felt before trial that this was exculpatory evidence and now that I got paper from Greenville Co. Sheriff's Office.  It's newly discovered evidence.  Did not find out till after trial they had the test still in evidence room.  I know Hembree would of tested positive.  The State was scared he would be.  If test and result would have been

> present at trial.  The jury would of found me not guilty.  That is what my
> testimony supported.  My constitutional rights 5th, 6th, & 14th and Due Process
> of Law were violated.  The GSR was critical to my defense.  Godfrey and the
> State denied me this chance to show the jury the truth.  See attachment 11-2.

App. 232.  At the PCR hearing, Petitioner testified that he repeatedly asked trial counsel to get

the results of the GSR test.  App. 264.  Petitioner also testified to his belief that the results of the

GSR kit would have shown that Hembree fired the gun.  App. 265.  Petitioner did not present

any evidence of the results of Hembree's GSR kit.  Ultimately, the PCR court denied the claim

that trial counsel was ineffective for failing to investigate the GSR kit, finding Petitioner "failed

to demonstrate how the results of Hembree's gunshot residue test would have had any impact

upon his case."  App. 290 (citing *Skeen v. State*, 325 S.C. 210, 481 S.E.2d 129 (1997) (holding

applicant not entitled to relief where no evidence presented at PCR hearing to show how

additional preparation would have had any possible effect on the result at trial)).

Now Petitioner claims trial counsel was ineffective for "failing to obtain an expert

witness to challenge the gun shot residue on State's witness Hembree."  ECF No. 1 at 14.

Petitioner's Ground Five is functionally the same claim raised in his state PCR action—he

believes trial counsel was ineffective for failing to obtain the results of Hembree's GSR kit.  That

Petitioner has now pinpointed that those results would be determined by an expert, rather than

just generally alleging that trial counsel should have "investigated" and obtained the results, does

not render this claim procedurally barred.  Particularly since the undersigned must liberally

construe Petitioner's pro se complaint, *see, e.g.*, *Cruz v. Beto*, 405 U.S. 319 (1972), the

undersigned agrees with Petitioner that this claim is not procedurally barred.  As such, the

undersigned will address the merits of Petitioner's Ground Five below.

B.  Merits Review

Each of Petitioner's Grounds Two through Five alleges a claim of ineffective assistance

of trial counsel. ECF No. 1 at 7–11, 14. Respondent moves for summary judgment, arguing that each ground is meritless. ECF No. 15 at 22–36. The undersigned will address the merits of each ground separately.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688–89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

        1. Ground Two – Ineffective Assistance of Counsel for Attacking Petitioner's Character in Opening Statement

In Ground Two, Petitioner argues that his trial counsel was ineffective for "negatively attacking Petitioner's character by revealing prior bad acts during opening summation by telling the jury Petitioner was running from the law and had outstanding warrants at the time of the incident." ECF No. 1 at 7. The record shows that Petitioner's trial counsel told the jury the following during his opening statement:

> As you have already learned from the opening statement of the Solicitor, basically, there are two people in this world who know exactly what happened when the shots were fired, two people, Brian Sturgeon and Skip Hembree.
>
> Ladies and gentlemen, both Brian Sturgeon and Skip Hembree were running from the law at the time. They had outstanding warrants on them. This case is going to bring you a section of life in society that most people don't see. What you really

need to do is listen very carefully to the witnesses as they testify to find out what they have to gain and what they have to lose.

App. 31.

Respondent argues that trial counsel did not err where "[c]ounsel's decision to inform the jury upfront in his opening statement about Petitioner's past crimes was a strategy to take the sting out of Petitioner's criminal history and demonstrate to the jury that they had nothing to hide." ECF No. 15 at 26. Respondent additionally notes that there could be no prejudice where Petitioner later admitted to his past crimes during his own testimony. *Id.* at 26–27. Respondent maintains that the record supports the PCR court's finding that Petitioner did not establish either deficiency or prejudice. *Id.* The undersigned agrees.

As Respondent asserts, when determining the merits of this issue, the PCR court found trial counsel was not deficient as his comment during his opening statement was not improper given the defense strategy. App. 291. Furthermore, even assuming that trial counsel's comment was improper, the PCR court still found Petitioner failed to show ineffective assistance of counsel because he could not prove resulting prejudice due to the overwhelming evidence of guilt presented at trial. *Id.*

At the PCR hearing, Petitioner testified that he believed trial counsel put Petitioner's character at issue during his opening statement, but Petitioner did not elaborate on that issue. App. 265–66. Trial counsel testified that his strategy at trial was to convince the jury that the shooting occurred during a struggle over a gun. App. 280. Trial counsel always planned to have Petitioner testify at trial, noting Petitioner "is very intelligent and is well spoken." App. 281. During Petitioner's testimony, trial counsel asked him about his prior record. App. 141–42.

The undersigned finds that Petitioner cannot show the PCR court unreasonably applied federal law or unreasonably applied the facts in denying relief upon this claim. First, where trial

counsel is presumed to have provided competent representation, and Petitioner has not shown that trial counsel's statement was improper given the defense strategy to plead self-defense and have Petitioner testify, Petitioner has failed to demonstrate that trial counsel was deficient.  As argued by Respondent, it was a reasonable trial strategy to try to take the sting out of Petitioner's criminal history by mentioning it upfront.  Additionally, in context the comment served to advise the jury that the witnesses they would hear from came from different circumstances than the jury might be familiar with and to encourage the jury to examine the possible motives of the witnesses to give certain testimony.  Second, as the PCR court determined, Petitioner failed to demonstrate any resulting prejudice, particularly where he admitted to his past crimes during his testimony and where the State presented overwhelming evidence of guilt.[7]  Therefore, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Accordingly, the undersigned recommends granting Respondent's Motion for Summary Judgment on Ground Two and dismissing this habeas ground.

        2. Ground Three – Ineffective Assistance of Counsel for Failure to Ask for Concurrent Sentences

Petitioner's Ground Three has been discussed in detail above, and the undersigned incorporates by reference the previous discussion.  *See supra* pp. 22–24.   In this ground, Petitioner argues that his trial counsel was ineffective for failing to request that Petitioner's 15-year sentence for ABWIK run concurrently with his 30-year sentences for voluntary manslaughter and kidnapping.  ECF No. 1 at 8. Further, Petitioner represents that he suffered

---

[7] Contrary to Petitioner's claim, the PCR court did not find trial counsel's comment to be "arguably inadvisable."  Rather, the PCR court found that even assuming for the sake of argument that it was error for trial counsel to make such a comment, Petitioner failed to establish sufficient prejudice to succeed in his ineffective-assistance-of-counsel claim.  *See* App. 291 ("[E]ven assuming *arguendo*, this statement was inadvisable, the Applicant cannot prove any resulting prejudice . . . .").

prejudice by trial counsel's error because instead of serving 30 years total, he will serve 45 years. *Id.*

In addition to arguing that this ground is procedurally barred, Respondent argues that trial counsel was not ineffective for failing to request that the sentences run concurrently where there was no basis on which trial counsel could have made such a motion. ECF No. 15 at 28–30. Respondent further notes that the particular statute that Petitioner claims trial counsel should have relied upon was not applicable to Petitioner's sentencing. *Id.* at 29–30. The undersigned has already addressed Respondent's procedural bar argument. *See* supra pp. 22–24.

Though Petitioner testified at the PCR evidentiary hearing that he believed his sentences should have been set to run concurrently, *see supra* pp. 23–24, when trial counsel was asked if he thought it would have been proper to object to the trial judge running the sentences consecutively instead of concurrently, trial counsel responded, "I don't know what the objection would be. In South Carolina that's a legitimate sentence. I'm going to object to what? Judge, I'm sorry, you can't do that because my client ain't that kind of a bad guy. I mean, I don't know what the objection would be[,]" App. 279. In its Order of Dismissal, the PCR court concluded that Petitioner had not met his burden where he "failed to present any cognizable basis upon which trial counsel could have made such an objection to a lawful sentence." App. 293.

The record supports the PCR court's conclusion. As trial counsel testified, the trial court's sentence was appropriate under South Carolina law, and Petitioner failed to present any law to support his belief that the convictions should have been considered "one crime." As Respondent points out, Petitioner's reliance on section 17-25-50 is misplaced. The South Carolina Supreme Court has made the following clear:

> [Section 17-25-50] is a recidivist statute. Where the indictment charges the
> defendant with the commission of separate and distinct crimes, each involving

distinct elements not included in the other, then it is entirely proper for the court to impose sentences on each count for which the defendant is convicted. Thus, there is no evidence to support the PCR court's findings that counsel was ineffective in failing to request concurrent charges.

*Legare v. State*, 509 S.E.2d 472, 476 (S.C. 1998). Furthermore, the PCR court did not unreasonably apply federal law. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("[T]here can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument"). Petitioner has failed to establish either that the PCR court's denial of this claim was based on unreasonable factual findings or an unreasonable application of federal law. As a result, the issue raised in Ground Three is without merit, and the undersigned recommends that it be dismissed.

### 3. Ground Four – Ineffective Assistance of Counsel for Failure to Impeach State's Witness

In his Ground Four, Petitioner argues that trial counsel was ineffective for failing to impeach Hembree by pointing out that he had lied numerous times and informing the jury of Hembree's "propensity to lie . . . ." ECF No. 1 at 10. According to Petitioner, trial counsel had "readily available information" with which to impeach Petitioner but failed to do so. *Id.* Petitioner notes that his own "credibility and Hembree's credibility was a critical issue before the jury." *Id.*

Respondent argues that Petitioner is not entitled to habeas relief on this ground "where the trial record demonstrates trial counsel effectively cross-examined William Hembree on his inconsistent statements to police, as well as inconsistencies between his direct testimony and

31

cross-examination." ECF No. 15 at 31. Respondent further asserts that the record supports the PCR court's finding that Petitioner failed to demonstrate deficiency and notes that the PCR court reasonably applied federal law in its denial of this same claim. *Id.* at 32.

In his habeas corpus Petition, Petitioner does not specify what particular information he believes trial counsel should have used while cross-examining Hembree. However, at his PCR evidentiary hearing, Petitioner provided greater detail as to how trial counsel should have impeached Hembree, stating:

> I have paper work on where Hembree has lied numerous times on using his name. Because right before this crime in Pickens County he had used a guy named Ricky Mosley's name. And I have all the paper work there. And he was also talking about where he had been shot before in the past. And I also wanted Godfrey to investigate that, his prior shooting. I mean, why does this man keeps saying he keeps getting shot. So there's got to be a problem. And I got the paper work from the Pickens County hospital where he mentioned that he had a gunshot wound in his shoulder.

App. 268. In his testimony, trial counsel confirmed that Hembree "had a history with guns[,]" further noting "[e]verybody out there had a history with guns." App. 281. Trial counsel also testified that he would have "[a]bsolutely" pointed out any inconsistencies between Hembree's statements. App. 280–81.

The PCR court denied Petitioner's claim that trial counsel was ineffective for his cross-examination of Hembree, finding Petitioner failed to meet his burden. App. 291. The PCR court found that trial counsel impeached Hembree with inconsistencies in his statements and testimony and also questioned him as to why he told police that Petitioner's name was Brian Sorgee. *Id.* The PCR court's factual findings are supported by the record. App. 53–64. For example, when Hembree's trial testimony about when he had seen Petitioner before the shooting differed from his statement to police, trial counsel asked: "So your memory is better now than it was then?" App. 61. Trial counsel also asked why Hembree told police that Petitioner's name was "Brian

Sorgee" if he had known Petitioner well before the shooting.  App. 64.  Trial counsel also got Hembree to admit that it was possible "that part of the reason [Hembree had] an inability to remember is because [he] was high[.]"  App. 65.

The undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting Petitioner's ineffective-assistance-of-counsel claim, or that the PCR court made objectively unreasonable factual findings. A review of the trial transcript and the testimony at the PCR hearing reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here.  Additionally, Petitioner has failed to demonstrate that the PCR court unreasonably misapplied the *Strickland* test concerning his allegations that trial counsel was ineffective for failing to properly impeach Hembree.  *See Strickland v. Washington*, 466 U.S. 668, 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) (recognizing that "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature" and further that some cross-examination can be "counterproductive").  Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground Four.

       4. Ground Five – Ineffective Assistance of Trial Counsel for Failure to Challenge
       the Gunshot Residue

In Ground Five, previously discussed above, Petitioner argues that trial counsel was ineffective for failing to obtain an expert to test the gunshot residue found on Hembree.  *See supra* pp. 24–26.  According to Petitioner, "this test would have revealed THAT Hembree had

33

gun shot residue on his hands that would have corroborated Petitioner's version of events during trial and established his actual innocence that Hembree was the actual shooter, not Petitioner." ECF No. 1 at 14. Petitioner also claims that PCR counsel failed to adequately present this claim, and any default should be excused by *Martinez v. Ryan*, 566 U.S. 1 (2012).

Maintaining the argument that this claim has been procedurally defaulted, Respondent alternatively argues that there is no support for this claim in the record. ECF No. 15 at 18-22. Respondent discusses the PCR court's finding that Petitioner "failed to meet his burden of proving trial counsel should have investigated Hembree's gunshot residue kit." *Id.* at 35 (quoting App. 290). Respondent also argues that regardless of counsel's performance, Petitioner cannot prove prejudice where he failed to present any evidence or testimony to support his claim that the test would have been positive. *Id.* Thus, Respondent contends Petitioner is not entitled to habeas relief.

At trial Hembree testified that immediately prior to the shooting he was driving a car with his girlfriend, Jandie, riding in the front passenger's seat and Petitioner riding in the backseat. App. 46. Petitioner had been asking to use the car, and his requests had gotten progressively more intense. App. 45–46. Hembree testified that he pulled into a parking lot, and:

> [A]ll I remember is reaching for the gear shifter. And when I come to, I come to trying to grab my breath. I was laying in the parking lot with a seatbelt around my neck. And Brian had me by the shoulder of my shirt – back of my shirt trying to tug me, trying to drag me, telling me, Come on, Skip, I've got to get you in the back seat.
>
> So I guess I come back to life or whatever. I come up trying to get my breath. I'm bleeding out the ear like I've got a hose pipe stuck in this ear and it's coming out this ear. My head feels like it's as big as two watermelons. I can't get my right side to work. It won't work. It won't function. Every time I try to stand up, I just fall and start rolling because the parking lot was kind of slanted.
>
> . . . .

> He just kept coming at me, you know, like he was going to get me or shoot me
> again. He still had the gun in his hand. And, finally, somebody come up from
> behind and Andy opened his door. And Brian went and jumped in the car. And
> when he backed up, that's when I seen Jandie. Her head was laid over against the
> window. And he took off with her.

App. 46–47. Petitioner provided a different version of events, telling the jury:

> [O]n our way back from Bobby Seaborn's, an argument got started. He got mad
> at me calling him a snitch, because he sent Donna to prison. And by the time we
> got to Andy's apartment, it was pretty heated. We pulled up in the parking lot and
> I heard a pow. And I jumped over and I grabbed his hand. And I guess it went to
> the back seat or whatever. I'm not sure how Jandie got shot. I started hitting him
> and it went off again. So I put both hands on the gun and spun in around.

> I wish the car never was burned because it had holes in the window.
> There was two other bullets that they found inside. But, as we was going, we was
> fighting over the gun. And I was shoving it back on his head trying to get him to
> stop. I mean, I was in fear of my life.

App. 148.

At the PCR evidentiary hearing, Petitioner testified that a gunshot residue test kit was
done on Hembree, but it was never sent in for testing. App. 264–65. Petitioner testified that he
asked trial counsel to get the result, but trial counsel did not do so. App. 264–65. Trial counsel
testified that he was sure that he and Petitioner had discussed testing the gunshot residue kit and
further explained, "[t]here was a fight over the gun. There were a number of shots fired from the
gun when both guys were fighting over the gun. Realistically I'm sure that there would have gun
shot residue on Hembree. I mean, below back blowout, I'm sure there would be." App. 275–76.
The PCR court ultimately decided Petitioner failed to meet his burden of proving trial counsel
should have investigated the gunshot residue kit, finding Petitioner failed to demonstrate how the
results of Hembree's gunshot residue test would have had any impact upon his case. App. 290.

Turning to the merits of this habeas ground, the undersigned finds that Petitioner cannot
show the PCR court unreasonably applied federal law or unreasonably applied the facts in

denying relief upon this claim. Indeed, the PCR court's factual conclusions are supported by the record.  Petitioner failed to introduce any expert testimony to establish what the results of Hembree's GSR kit were, nor did he present any expert testimony to demonstrate how the results of Hembree's GSR kit supported Petitioner's version of the shooting.  The Fourth Circuit has indicated that deference will be given to trial counsel's reasonable or plausible strategic decisions, particularly where there is no clear showing of prejudice to the petitioner from such strategy.  *See Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (refusing to misuse "power of hindsight" to second guess trial counsel's "'plausible strategic judgments'") (quoting *Bunch v. Thompson*, 949 F.2d 1354, 1364 (4th Cir. 1991)); *Sexton v. French*, 163 F.3d 874, 887 (4th Cir. 1998) ("Obviously, this tactical decision made by . . . trial counsel cannot be second-guessed by this court . . . ."); *Fitzgerald v. Thompson*, 943 F.2d 463, 469 (4th Cir. 1991) ("[T]rial counsel made reasonable tactical decisions that should not now be second-guessed on collateral review."); *see also Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce.'") (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993)). Therefore, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Accordingly, the undersigned recommends granting Respondent's Motion for Summary Judgment as to Ground Five and dismissing this habeas ground.

V.    Conclusion and Recommendation

Therefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 16, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

July 11, 2016                                                    Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**